John H. Farnham, J.
This proceeding is an article 78 proceeding brought on by an order to show cause by various parents of children attending Prescott Junior High School, which is situated on East Willow Street, in the City of Syracuse, New York.
The petitioners seek an order voiding and annulling a resolution and order of the Board of Education of the City of Syracuse, dated May 12,1964, which closed Prescott Junior High School, transferred approximately 233 students to Madison Junior High School and relocated the boundary lines of Prescott Junior High School District. They claim that the action of the respondent was arbitrary, capricious and unreasonable and was in violation of section 3201 of the Education Law of the State of New York and the Constitutions of the United States of America and the State of New York.
The respondent, Board of Education of the City of Syracuse, opposes the proceeding on the grounds that its action in closing Prescott Junior High School was not unreasonable, arbitrary or capricious, nor in violation of said section of the Education Law or the Constitutions of the United States or the State of New York. The respondent also opposes the requested relief on the ground that section 310 of the Education Law was not followed by the respondent before commencing the instant proceeding. However, the court feels that the problem can better be resolved by deciding the case on the merits rather than on tech *735 nical grounds or procedural grounds and proposes to consider and determine the matter accordingly.
The petitioners’ attack on the action of the Board of Education in closing Prescott Junior High School is based on the following contentions:
First: It is contended that the action of the Board of Education in closing the Junior High School and transferring the pupils to Madison Junior High School is arbitrary and capricious in that the Junior High School portion of Prescott School was and still is adequate to maintain and educate properly the Junior High School pupils therein enrolled; and
Second: That the transfer will result in forcing the students to walk approximately two miles and in some instances more than two miles from their respective homes to Madison Junior High School and further that they will be required to cross some heavily travelled thoroughfares. Petitioners contend also that the result of this action is another attempt at the destruction of the “ neighborhood school concept ”.
In the court’s opinion, section 2554 of the Education Law is sufficient and adequate authority for the action of the Board of Education in this case.
It appears that, in the report to the Board of Education, in the year 1959, as a result of considerable research a detailed document or report was prepared entitled, “ A Look Ahead At The Syracuse Public School Building Need”. Therein it was suggested at that time that Prescott Junior High School should be programmed out of existence and that Madison School should receive some of the Prescott Junior High School students. That report, together with documents and minutes of meetings of the Syracuse Board of Education presented to the court reveal that Madison School now is a school of greater capacity for student population, also that it has a more adequate staff and facilities, larger student counseling services and, as a result, now is better able and equipped to meet the needs of the Junior High School students than is Prescott Junior High School. Some $90,000 has been expended for its general improvement since the 1959 report.
Based on the foregoing, in the court’s opinion, there is no basis for a finding of arbitrariness or capriciousness on the part of the respondent in the subject proceeding.
The petitioners support their action on the further premise that the closing of Prescott Junior High School was based also on the purpose of improving racial imbalance, and in itself that this constitutes a violation of section 3201 of the Education Law and also of the Constitutions of the United States of America and the State of New York,
*736 The respondent concedes that racial imbalance was one of the factors which played a part in arriving at its decision but not the sole or controlling reason. The court can find no reason for not accepting respondent’s argument in this regard, i.e., that the correction of racial imbalance was only one of the numerous factors as set forth above which played a part in the board’s determination.
However, even if the court were convinced that the sole purpose in closing the Junior High School portion of Prescott School and in transferring the students to Madison School was was the correction of a situation of racial imbalance, which it is not, the court still would be of the opinion that at this time it has no power to hold that said action would be arbitrary and capricious or a constitutional violation.
"While it is true that the students at Madison School are largely colored and the enrollment at Prescott Junior High School is largely white or Caucasian, yet the court believes that the recent case hereafter designated Matter of Vetere v. Mitchell (21 A D 2d 561) in a Third Department Appellate Division unanimous decision handed down on July 21, 1964, which reversed a lower court decision annuling a determination of the Commissioner and denied his motion to dismiss the petition, the lower court’s decision having been reported at 41 Misc 2d 200, as well as the case Matter of Strippoli v. Bickal (21 A D 2d 365) in a Fourth Department decision handed down on June 25,1964, unanimously reversing 42 Misc 2d 475; and the Court of Appeals case Matter of Balaban v. Rubin (14 N Y 2d 193) would seem to have resolved this issue beyond any question of doubt. In their memorandum submitted to the court, petitioners place reliance on the case of Matter of Di Sano v. Board of Educ. (43 Misc 2d 272) which in turn cites as authority Matter of Strippoli v. Bickal (supra). By its reply memorandum, respondent informs the court that the Di Sano case (supra) now is on appeal to the Fourth Department of the Appellate Division. As stated, the latter tribunal already has reversed the lower court’s ruling in the Strippoli case. The court also refers to the authorities cited in the above cases, including Brown v. Board of Educ. (347 U. S. 483), which .is the leading ease on this subject. Quoting from the Strippoli opinion by Presiding Justice Williams, it was ¡stated that (p. 368) “ The only question before us is whether, by means of a plan of action which is otherwise reasonable and lawful, the schools may also attempt to correct racial imbalance and this issue has already been resolved by our highest court (Matter of Balaban v. Rubin, supra).” In Matter of Strippoli v. Bickal (supra) apparently it has been decided by our appellate *737 courts that correction of racial imbalance is a legitimate goal of school boards in this State.
Until the decision of the Appellate Division in Matter of Vetere v. Mitchell, overruling Justice Bookstein’s decision in the lower court was handed down, this court might have been prepared to go more deeply into the racial issue as it appears in this proceeding. However, the facts in the ease at hand do not appear to be nearly as strong as were the facts in the Vet ere case and if in that case the Appellate Division, in its judgment, deemed it legally proper, expedient and necessary to overrule Justice Bookstein unanimously, there would appear to be little room for argument in the instant case concerning the right of the Board of Education to correct racial imbalance even if that were the dominant and controlling factor, which, on the record before the court, it is not.
In summary, therefore, the court must accept the respondent’s position that racial imbalance was only one factor in its decision. As was stated in the said Matter of Balaban v. Rubin (14 N Y 2d 193, 199, supra) by Chief Judge Desmond : “ The Board of Education has express statutory power to * * * and to ‘ determine the school where each pupil shall attend ’. (Education Law, §§ 2556, 2503, subd. 4, par. d).”
In this general regard, the court quotes briefly, but in direct point, from the opinion of Presiding Justice Beldock when he wrote for the Second Department in the same Balaban ease when it was before that court (20 A D 438, 450): “ The choice of schools must be left to the sound discretion of the board; otherwise there would be chaos in the administration of the school system ”,
In arriving at its determination on this motion, the court is not unmindful of the possibility of resultant inconvenience to parents and pupils, which is regrettable. However, it feels that the recently decided appellate cases present a clear and unmistakable mandate to this court to render its decision on the facts at hand in strict conformance and compliance with what it believes now is the guideline law controlling the matters at issue herein.
In its memorandum, respondent gives assurance also of the present high quality or at least now, the superior quality of Madison School over Prescott School and states that adequate safety precautions for the well being of the transferred students will be taken. In its answer, by way of exhibits and supporting documents, respondent states that the distance from 220 homes of residences of Prescott School pupils in the 7th, 8th and 9th grades to Madison School is as follows: Less than 1 mile, 96 *738 residences; 1 to % miles, 113 residences; 1% to 2 miles, 12 residences ; and 2 miles, none; and that these distances are fairly comparable and less in many instances than distances travelled by pupils in 8 other Junior High Schools.
It appears that each year the Board of Education establishes an “ open school ” policy which enables pupils to attend certain ■schools which should be identified by the Board of Education as being’ available for additional pupils. Under this policy parents have the right to notify the school authorities of their desire to have the pupil attend one of the under capacity schools and this may be accomplished until capacity is reached.
On May 13, 1964, the current year policy was established by the board and the Junior High Schools designated as “open schools ” were Clary, Eastwood, Grant, Madison and H. W. Smith. The board also made recommendations for procedures to be followed by the parents. As a result of the foregoing 110 Prescott parents requested transfers to Grant Junior High School and 13 additional parents requested transfers to Eastwood Junior High School, making a total of 123 transfer requests from Prescott School parents. Accordingly, the court determines that the petition must be denied, without costs to either party.